## Kaine et al., School Directors, *versus* The Commonwealth ex rel. Manaway.

1. Since the Act of June 8th 1881 (P. L. 76), school directors cannot deny a colored child admission, on account of his color, to a common school established by them for the separate instruction of white children, and .assign him to a branch of said school established by them, in a neighboring building, for the separate instruction of colored children.

2. Where a relator averred, in a petition for a mandamus, that the school directors of his district had refused admission to his son, a colored boy, to "school building No. 1," solely on account of his color, and had assigned him to "school building No. 2," where colored children only were received; and the answer of the school directors, while setting forth various reasons for their action, did not specifically deny that said assignment had been made on account of color; the court, on demurrer to the answer, entered judgment for the Commonwealth, and awarded a peremptory mandamus, commanding the respondents to admit said pupil into school building No. 1, and proceed to determine his grade therein: *Held*, that the peremptory mandamus was properly granted.

. . SHARSWOOD, C. J. dissented.

, : November 23d 1882.  Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Fayette county :* Of. January Term 1883, No. 72.

Mandamus, by the Commonwealth of Pennsylvania at the relation of John Manaway, against Daniel Kaine, et al., school directors and superintendent of the school district of the borough of Uniontown, commanding them to admit the relator's minor son, Springer Brown Manaway, a colored boy, as a pupil in the public school, in the main school building known as No. 1., and proceed to determine into which grade or class of said school he should be admitted.

The petition of the relator averred that the respondents had denied his son admission to said main school building, but had assigned him to a separate public school established in said district for the tuition of colored children, and that "the only reason his said child has been refused admission to said school (in building No. 1), is because of his color."

To the petition, and writ of alternative mandamus issued

thereon, the respondents, school directors, filed the following answer : 1. That in said borough there is one common graded school kept and maintained under the directors, and a principal, E. H. Reppert, and his assistant teachers, male and female. That said school is kept and maintained in two buildings for school purposes, each in the East Ward of said borough, No. 1 situate between Church and South street, and No. 2, situate near Fayette street, being within three hundred yards of each other, equally convenient and kept in equally good order and condition. That in each of said buildings, proper teachers are employed to teach the pupils in attendance the studies and branches, of learning proper to their grade, in each room of each building. That under the law of the state, the said directors and the said principal assigned the child, Springer Brown Manaway, son of the relator, to room No. 2 in building No. 2, his proper grade, being taught in said room and building.

2. That the room and building No. 2 is nearer to the relator's residence property, than is building No. 1, and just as easy of access, it adjoining his said property in said East Ward, where he has resided and voted and been assessed as a citizen for many years, whilst he was assessed as a non-resident in the next ward, where no school is kept, all pupils of the next ward attending the school buildings in the East Ward.

3. That Springer Brown Manaway has not been denied the privileges of said common school by the said directors nor by the principal ; but his father, the relator, refuses to allow him to enter the school building and room to which he has been assigned as aforesaid, making himself the judge of where and to what room he shall go, regardless of grade and regardless of the rights and duties of said directors and said principal, as the school law authorizes and directs ; and these respondents deny the right of the relator to inquire into or determine their motives and reasons for assigning his son to school building and room No. 2. They deny his right or claim to dictate to them into what school building or what school room his said son shall be admitted, and by whom and what he shall be taught, and how he shall be graded. That the authority and discretion of the directors in the premises is exclusive and without appeal, and has been exercised in conformity to law.

The superintendent separately answered : that as far as he is concerned, Springer Brown Manaway has not been denied admission to the public or common school of said district. That he concurred in the statements of the foregoing answer of the school directors, as to the location, accessibility, convenience and condition of said two school buildings, and as to the teachers employed and studies taught. That on the application of Springer Brown Manaway for admission, he was examined by

this respondent, and assigned to room No. 2, in building No. 2, his proper grade being taught therein, in the judgment of this respondent, he having been directed by said directors to examine said child and assign him according to his grade.

The relator demurred to said answers, whereupon the court, WILLSO.: P. J., after argument, entered judgment for the Commonwealth on the demurrer, and awarded a peremptory mandamus, commanding as above set forth. Whereupon the respondents took this writ of error, assigning for error the entry of judgment as above ; and that mandamus would not lie in such case.

*Samuel Dickson* and *D. Kaine* (*G. W. K. Minor* with them), for the plaintiffs in error.—This case arose on the following action of the School Board :

"*Whereas*, this Board, in the performance of its paramount duty, which is to give the best education possible within the means at its disposal to the whole population, without regard to race, color or previous condition, is assured that this end can be best attained by educating the different races in separate schools ; Therefore *Resolved*, That the committee on teachers, aided and assisted by the superintendent, be authorized and instructed to take such steps, during vacation, as may be necessary to carry this object into effect."

It is admitted that the schools held in the separate buildings are of equal excellence, and we contend that such classification is not in contravention of the Act of June 8th 1881, which forbids a "distinction" to be made by reason of race or color, in the admission of pupils to the public schools. That Act must be construed in harmony with section 23 of the Act of May 8th 1854 (P. L. 622), which gives school directors power " to establish schools of different grades, and determine into which school each pupil shall be admitted." The answer averred,—what is admitted by the demurrer,—that the child " has not been denied the privileges of said common schools by said directors, but his father refuses to allow him to enter the school building and room to which he has been assigned." Under art. 10, sec. 1 of the Constitution of Pennsylvania, it is the duty of the school directors to maintain a " thorough and efficient" system, but if the ruling of the court below is affirmed, they will be powerless to prevent all children, white or colored, from electing into which school building they will enforce admission, and thus destroy the efficiency of the system. The action of the respondents is supported by the following authorities : Bertonnean *v.* School Directors, 3 Woods C. C. Rep. 177 ; Garnes *v.* McCann, 21 Ohio St. 198·; Corey *v.* Carter, 48 Ind. 327 ; Wards *v.* Flood, 48· Cal. 36 ; 10 Fed. Rep. 730 ; 13 Ibid. (1882) 337.

[Kaine *v.* Commonwealth.]

· *A. Boyd,* for the defendant in error, cited : Commonwealth
ex rel. Middleton *v.* Commissioners, 1 Wr. 237 ; Commonwealth
ex rel. Armstrong *v.* Commissioners, 1 Wr. 277.

Mr. Justice MERCUR delivered the opinion of the court, De-
cember 30th 1882.

The first section of the Act of 8th of June 1881, Pamph.
Laws 76, declares that "hereafter it shall be unlawful for any
school director, superintendent or teacher to make any distinc-
tion whatever on account of or by reason of, the race or color of
any pupil or scholar, who may be in attendance upon or seeking
an admission to any public or common school, maintained
wholly or in part under the school laws of this Commonwealth."
Sect. 2 repeals the 24th section of the Act of 8th of May 1854,
which authorized the establishment of separate schools for the
tuition of negro and mulatto children.

This writ of mandamus issued at the relation of a colored
man who averred, inter alia, that he was a resident and tax-payer
in the school district of the Borough of Uniontown, and that his
child, who was above the age of six and under the age of twenty,
one years, was denied admission into the public or common
school of said district ; that a separate school for the tuition of
colored children had been established in the East Ward of said
district, remote from the relator and not easy of access ; that he
resided in the West Ward of the district, and near the main pub-
lic school building, and easy of access thereto, and that his said
child was refused admission to said school, by reason of his color.

In answer · thereto the school directors aver various reasons
for assigning the child to another school building than the one
into which he seeks admission ; but make no distinct denial that
he is excluded therefrom by reason of his color, and they deny
the right of the relator to inquire into the reasons or motives of
the school directors in assigning his child to the one school
house or the other.   On demurrer the court adjudged the an-
swer insufficient and entered judgment in favor of the Common-
wealth, and ordered a peremptory mandamus to issue, command-
ing the plaintiffs in error to admit the minor son of the relator
as a pupil into the public school under their control in the said
main school building, and to proceed to determine into which
grade or class of said school the said minor child shall so be ad-
mitted as a pupil.

This order of the court presents the main cause of complaint,
although several errors are assigned.

The first and the second question the power of the court to
award either the alternative or the peremptory mandamus.

There is no denial in the answer that a separate school for·
the tuition of colored children is established in the district ; nor

is there any clear and specific denial that the son of the relator is refused admission into the other school by reason of his color. It is true the answer does declare other reasons why the boy was excluded from the one school and assigned to the other; but carefully fails to meet or deny the charge, that the controlling reason therefor is his color. Nothing less than plain and direct answers to all the material allegations in the writ of mandamus, present distinct issues of fact. Skillful avoidance of a material allegation, or argumentative inferences are not sufficient: Commonwealth ex rel. Middleton *v.* Commissioners of Allegheny Co., 1 Wright 237; 8 Casey 218.

It is asked may not the school directors and teachers assign the boy to such room and school as may be adapted to his grade and attainments? Undoubtedly they may. Their authority and discretion in that respect is not questioned here. The objection is, that their action is not based on any consideration of his qualifications or attainments, but rests on his color alone. This is in direct conflict with the Act of Assembly cited. The law making power of the Commonwealth has declared that such action by "any school director, superintendent or teacher shall be unlawful." The 23d section of the Act of 8th May 1854; P. L. 622, declares "the directors and controllers of the respective districts shall have power to establish schools of different grades, and determine into which school each pupil shall be admitted." This power, however, must be exercised in subordination to the later Act of 8th of June 1881, and not in conflict with any of its provisions. The cases cited in Ohio, Indiana, California, Louisiana and New York were not ruled on any statute similar to ours, and cannot therefore be authority in its construction. The question before us is not whether the action of the school directors is directly in conflict with the Constitution of the United States, but whether it is forbidden by the statute of Pennsylvania, which does not impinge on the Constitution of the United States nor on any law of Congress. The statute is in harmony with the spirit and object of the 14th Amendment, section 1, of the Constitution of the United States.

It is clearly within legislative power to prescribe the duties of school directors, and direct that they shall not make any distinction on account of race or color, in expending the public money. Their duty being declared by statute the courts are empowered to compel its performance. As no other adequate and specific remedy is provided by statute or furnished by action at common law, mandamus is the proper remedy: Commonwealth ex rel. Thomas *v.* Commissioners of Allegheny County, 8 Casey 218; Borough of Uniontown *v.* Commonwealth ex rel. Veech, 10 Id. 293; Commonwealth ex rel. Hamilton *v.* Select and Common Councils of Pittsburgh, Id. 496.

[Wilson v. Mitchell.]

A father is the natural guardian of the person of his minor child, and charged with the duty of promoting its education. This proceeding is for the benefit of his child, as well as in furtherance of his parental duty. The relator therefore has a greater right in the object sought, than is possessed by the public generally; and is the proper person to make this application: High on Extraordinary Legal Remedies, § 438. The learned judge therefore committed no error.

Judgment affirmed.

SHARSWOOD, C. J., dissented.