# Mayo, Appellant, v. Morton School District.

*School law—Mandamus—Distinction on account of color—Act of May 18, 1911, P. L. 381, Section 1405.*

On the trial of an issue of fact in mandamus proceedings under the Act of May 18, 1911, P. L. 381, Section 1405, making it unlawful "for any school director, superintendent, or teacher, to make any distinction whatever on account of, or by reason of, the race or color of any pupil or scholar who may be in attendance upon, or

seeking admission to, any public school," where the testimony is conflicting, as to whether such distinction was made, the case is for the jury.

Argued Nov. 18, 1918. Appeal, No. 56, Oct. T., 1918, by plaintiff, from judgment of C. P. Delaware Co., September T., 1915, No. 49, on verdict for defendant in case of Edward J. Mayo v. School District of Morton, and Willard Stover, Charles Bishop et al., School Directors of the School District of Morton, and S. C. Richmond, Teacher and Principal of the School District of Morton. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and WILLIAMS, JJ. Affirmed.

Mandamus proceedings under the Act of May 18, 1911, P. L. 381, section 1405. Before JOHNSON, P. J.

From the record it appeared that the action in the court below was begun by a petition for a mandamus, asking that the defendants be commanded to put two children of the plaintiff in the same building with white children, and averring as a basis for said action that said children were not so assigned by reason of their color.

An answer denied this averment and asserted that the said children were assigned to the building with a view to the better discipline and education of the children and without respect to the race and color of any pupils who were in attendance or seeking admission to either of said public schools.

The evidence was conflicting as to whether any distinction was made. The court submitted the case to a jury.

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were the charge of the court, various rulings on evidence and in refusing binding instructions for plaintiff.

*G. Edward Dickerson,* and with him *A. D. MacDade,* for appellant.

*William C. Alexander,* for appellee.

OPINION BY HENDERSON, J., July 17, 1919:

The issue raised by the pleadings involves the good faith and legality of the action of the school authorities of the school district of the Borough of Morton, in assigning the plaintiff's children to a school maintained in what is described as the old school building, rather than in a new building which had been erected to enlarge the accommodations of the public schools of the Borough of Morton. The plaintiff is a colored man, a resident, and a taxpayer of the borough. His allegation was that the board of school directors, and the superintendent, and certain teachers of the school, had illegally classified or graded the pupils of the schools, so that all of the colored pupils, including two of the plaintiff's children, who were in the first six grades of the school, were placed or instructed in the old school building, and all the white children of the same grades were placed in the new building. This action was alleged to be discriminatory and violative of the second proviso of Section 1405, of the Act of May 18, 1911, P. L. 381, which declares: "It shall be unlawful for any school director, superintendent, or teacher, to make any distinction whatever on account of, or by reason of, the race or color of any pupil or scholar who may be in attendance upon, or seeking admission to, any public school." The answer of the defendants specifically denied each of the allegations of the plaintiff, and expressly averred that upon the opening of the two school buildings, in the Borough of Morton, provided for the education of the children in the said borough, the said board of school directors, together with the principal, proceeded to grade the pupils according to their respective averages, grades, and discipline, having in mind solely and only the betterment of the discipline, the proper education and grading of all the resident pupils or children of school age within the said district of Morton, and without respect to the race

or color of any pupils or children who were in attendance or seeking admission to either of the said public schools. It was disclosed by the evidence that the new school house was ready for occupancy in September, 1915, and that at the opening of the school term, about sixty of the pupils in the sixth or lower grades, were placed in the old school building. Of these, four were white children and the remainder colored; two of the latter being children of the plaintiff. The other pupils, about one hundred and ten in number, were admitted to the new school building; eleven of these were colored pupils, one of whom was the daughter of the plaintiff. All of the colored pupils in the new schoolhouse were in grades above the sixth. The facts were not in dispute as to the number of white and colored children in each of the schools. The plaintiff's contention was that the division made by the school board and the superintendent was evidence of a distinction in classification on account of color, and, therefore, prohibited by the statute. The issue formed did not bring into comparison or contrast the relative capacity of white and colored pupils. There is much force in the argument of the plaintiff's counsel in which the merits and deserts of the colored people are so well presented, but the narrow limits of this case do not permit us to enter into so wide a field of discussion. The same section of the school code which prohibits the discrimination alleged by the appellant, provides: "That the board of school directors may upon any cause shown, permit any pupil or pupils in any school district to attend such school in said district as the board may deem proper, or may classify and assign the pupils in the district to any such school or schools therein as it may deem best in order to properly educate the same." The authority of the defendants, therefore, to assign the pupils under their control to appropriate schools, and to employ competent teachers for their instruction, cannot be denied. The necessity of such a provision is evident. The purpose of such classification is to more certainly insure the proper

education of each child, and the law commits to the board
of school directors the discretion to carry out this provi-
sion.  Whether the defendants acted in good faith in the
distribution of the pupils in the several schools was a
question of fact to be determined by the jury.  Voluminous
evidence was introduced bearing on the issue raised.
Much of it had a remote relation to the subject, but there
was a direct contradiction by the defendants of all of the
material allegations made in behalf of the plaintiff.  The
verdict of the jury must be considered as conclusive un-
less some error was committed by the court which would
sustain a reversal of the judgment.

The first error complained of is that the court did not
sustain the demurrer of the plaintiff to the defendants'
answer, and Kaine v. Commonwealth, 101 Pa. 494, is
cited as an authority in support of this proposition.  The
cases are not alike, however, in this respect that in the
case cited there was not a specific denial of the charge of
discrimination and distinction; while in the case before
us not only every material averment is denied, but there
is a definite explanation of the manner in which, and the
purpose for which, the classification of the pupils was
made which negatives the inference or allegation of a
distinction on account of color.  It was the duty of the
court, therefore, to refer the case to a jury.  The third,
fourth, sixth, seventh, eleventh, twelfth, thirteenth and
fourteenth assignments of error cover objections made to
the rejection and admission of evidence, and to the an-
swers of the court to points presented by the plaintiff.
It was proposed to be proved by the plaintiff that his
children who were sent to the schools in the old school
building were eligible for admission to the new school
building.  The court held that they were prima facie eli-
gible, but that the plaintiff was not competent to pass on
their qualifications.  It was also contended that the
action of the board of school directors in the matter of
the grading of the pupils should be evidenced by the
minutes of the board, and that the testimony of the

president of the board of school directors was not competent to show how the grading and classification was made. We have examined this evidence and the action of the court thereon with care, and are of the opinion that there was no error in the respect complained of. The opinion of the plaintiff, as to the proficiency of his children, was not binding on the school board or on the principal of the school, and could have no bearing on the action of the school authorities in carrying out the directions of the law with reference to the grading of pupils, nor was there error in permitting the president and the superintendent to testify as to the manner in which the classification was made and the reason for making it. The evidence shows that it was really made by the superintendent on information from subordinate teachers as to the proficiency and deportment of the pupils. This was not a necessary subject for record in the proceedings of the school board.

The answers of the trial judge to the third, fourth, fifth and sixth points were in strict accord with the issue and the law governing the subject. In every aspect of the case, the question for consideration was whether the assignment of the plaintiff's children to the school which they attended was on account of race or color. There was no legal presumption that a distinction was made, and the fact was to be affirmatively found by the jury, if such fact existed. However much one might be impressed with the belief that the consideration of color had influenced the action of the school authorities in the distribution of the pupils, taking into view the results of the grading, the only tribunal to try the question has exonerated the defendants from such an imputation. The charge of the learned trial judge brought plainly to the attention of the jury the point in controversy, and the duty of the jurors could not have been misapprehended by them. There was no denial of the testimony of the principal that he had graded the pupils on the basis of their intelligence and deportment and without any ref-

erence to their color, and with this evidence in the case, the issue was clear.   The present determination of the case as bearing on the administration of the schools in 1915, is unimportant, but it is before us and must be disposed of.   It is quite natural that the plaintiff having confidence in the intelligence and advancement of his children should be surprised by the results of the grading made by the school authorities and his suspicion as to its fairness may have been well founded.   His appeal was, however, necessarily to a jury; the law has not provided any other tribunal by which the question raised by him may be determined on the issue presented by the pleadings.   A review of the whole case brings us to the conclusion that the assignments of error cannot be sustained.

The judgment is affirmed.